PICKERING, APPELLANT, v. PICKERING, APPELLEE.

(No. 993—Decided December 23, 1959.)

*Messrs. Goslee & Dunlap*, for appellant.
*Messrs. Beck, Kelly & Miller*, for appellee.

*Per Curiam.* This is an appeal from a judgment of the Common Pleas Court in a divorce action. The plaintiff, appellant herein, assigns error in a number of particulars but from his oral argument and argument in his brief it is apparent that the only issue to be determined on this appeal is whether the trial court committed an abuse of discretion in its judgment as to the division of property and alimony.

That part of the judgment particularly complained of reads as follows:

"It is further ordered that the Wonder Bar remains as it now stands in the name of Nell Pickering; that Yuba Court and the home at 521 E. Columbus Ave., Bellefontaine, Ohio, both being held in joint survivorship title, be conveyed to Nell Pickering within thirty (30) days, and if plaintiff fails to make the proper conveyances, that he pay in lieu thereof the sum of Five Hundred Dollars ($500) per month as alimony; and that defendant is awarded the household goods at 521 E. Columbus Ave."

The plaintiff claims that the conveyance of his interest in Yuba Court and in the residence property would result in the defendant ending up with a net worth completely disproportionate to that of the plaintiff, that the alternative alimony of $500 per month would be excessive, and that neither the conveyances nor the monthly installment would meet the requirements of Section 3105.18, Revised Code, that the "Court of Common Pleas may allow alimony as it deems reasonable to either party, having due regard to property which came to either by their marriage, the earning capacity of either and the value of real and personal estate of either, at the time of the decree."

In our view of this appeal it is not necessary for this court to determine, and this court does not determine, whether the property division contemplated by the quoted portion of the judgment would bring about such a disproportionate result as to constitute an abuse of discretion. We are more concerned with the basic character of the quoted portion of the judgment. As a general rule alternative judgments have been held void, although under modern practice if a judgment is sufficiently definite and certain this general rule has been relaxed. See *State v. Wilson*, 216 N. C., 130, 4 S. E. (2d), 440; 49 Corpus Juris Secundum, 193, Judgments, Section 74, and cases therein cited.

However, without resorting to a determination of whether or not the judgment in question technically conforms to the definition of a judgment in the alternative, we observe and are of the opinion that it has many of the characteristics which have been found objectionable in alternative judgments. The judgment is not self-executing in that it cannot at any time be determined by mere reference to the judgment alone, or even by further reference to the file of the case, whether or not the alter-

native is applicable, as, by its terms, the alternative is applicable only if plaintiff fails to convey within thirty days. If he conveys the alternative is not applicable. If he elects not to convey he cannot be required to convey. The judgment may not therefore be enforced ministerially by the issuance of execution or otherwise. The judgment for the payment of $500 per month, if a judgment at all, cannot be operative and enforced immediately upon the entry of judgment; at best it can become operative no earlier than thirty days after the entry of judgment, and, if conveyances are made within the time limited, it never becomes operative.

When an appeal is taken from such a judgment the problems are compounded. Since the plaintiff is complaining that the conveyances mentioned constitute an abuse of discretion we must assume that he has not made such conveyances. The conveyances not having been made, how can the appellate court determine what, in the final analysis, will be the effect of the judgment? If the judgment is binding on this plaintiff what is he going to choose to do—convey or pay monthly installments? Not knowing, are we required to determine whether abuse of discretion, if applicable, is applicable to both parts of the judgment, and, if applicable to either part, and not to the other part, does the part of the judgment tainted by the abuse of discretion fail and that part not so tainted stand? Or, if either part of the judgment is so tainted does the entire judgment fail?

The fact that the judgment purports to give the plaintiff his choice of one of two courses indicates that as to him one course is preferable to the other and that the two courses are therefore not equivalents. If they are not equivalent as to the plaintiff they are not necessarily any more equivalent as to the defendant. Since the exercise by the plaintiff of his choice would therefore result in the defendant receiving more or less than the defendant would have received had the choice not been exercised, then does the exercise of choice by the plaintiff constitute a judicial determination, not by a court, but by a private individual?

These rhetorical questions illustrate the problems coexisting with this type of judgment. However, we can arrive at a decision without attempting to answer all these questions. A

judgment being a judicial act which settles the issues, fixes the rights and liabilities of the parties, and determines the proceedings, without implementation by any person not possessing judicial powers, then, what do we have here if judicial action alone is considered?

The conveyance part of the judgment becomes operative only if the plaintiff chooses to convey. If the plaintiff does not elect to convey and does nothing then the plaintiff becomes charged, at the expiration of thirty days, with a judgment against him for installment payments of alimony at the rate of $500 per month. This latter then constitutes that part of the judgment of the court unaffected by the act of any individual, and is that part of the judgment in question which we will first consider to determine whether it is tainted by an abuse of judicial discretion.

It is undisputed in evidence that the defendant receives from $80 to $90 per week from pinball and music box concessions, and receives a salary of $100 per week from a corporation of which she is 95% owner, but of which the yearly profits or dividends to defendant are not disclosed. It further appears that no children were born of the union and that defendant's obligations are merely to maintain herself, maintain the properties owned by her, and pay her debts. The defendant has therefore a monthly cash income of at least $720 supplemented annually by her share of the corporate profits. On the other hand, the only evidence as to plaintiff's income discloses that over a three-month period he had personal draws from his business of $250, had paid $3,000 on "bad checks" and personal back accounts, and had a business bank account balance of $284 at the end of the period. Assuming that he had no bank balance at the beginning of the period this evidence would make it appear that plaintiff was making at the most the sum of approximately $1,200 per month. Plaintiff is obligated to pay $100 monthly to a previously divorced wife, maintain himself, his properties, and pay his debts. The evidence shows also that the Hofbrau, owned and operated by plaintiff, was grossing about $1,100 to $1,300 per week, whereas the Wonder Bar, owned by the corporation of which defendant is 95% owner, grossed around $3,000 during the last three weeks in January and $3,800

during the month of February, and in March was running "around $900 to $1,000 a week." Considering the uncertainty of the evidence as to income but also considering the fact that plaintiff was receiving some additional income from the apartments at Yuba Court ($100 per month), considering defendant's income from her amusement machines, and considering the weekly and monthly grosses of the respective businesses operated by them, it would not be reasonable to conclude that defendant was receiving any less income than the plaintiff. In consideration of the property which each owned at the time of the marriage, in consideration of their respective interests in property at the time of the divorce decree (without further conveyance) and in consideration of their approximately equal annual incomes, this court is of the opinion that that part of the judgment ordering the plaintiff to pay the defendant alimony in the amount of $500 per month constitutes an abuse of discretion within the definition of that term in *Steiner* v. *Custer*, 137 Ohio St., 448.

Being an abuse of discretion, the judgment as to alimony payments is thereby erroneous and void. By reason of such error there would be no operative judgment of the trial court in the event that the plaintiff chose not to convey the properties mentioned in the decree. The failure of the alimony installment decree is therefore so closely related to the balance of the decree that the entire decree fails.

This court not being authorized to exercise the discretion bestowed upon the trial court and not being able to modify the judgment of the trial court as a matter of law, the judgment as to alimony and division of property must therefore be reversed and the cause remanded to the trial court for a new trial on such issue only and for further proceedings as provided by law.

*Judgment reversed.*

YOUNGER, P. J., GUERNSEY and MIDDLETON, JJ., concur.