ROWE, Appellee,

v.

ROWE, Appellant.

[Cite as *Rowe v. Rowe* (1990), 69 Ohio App.3d 607.]

Court of Appeals of Ohio,
Lucas County.

No. L–89–272.

Decided Sept. 28, 1990.

608

*Keithley B. Sparrow,* for appellant.

MELVIN L. RESNICK, Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, which granted plaintiff-appellee, Virginia E. Rowe, a decree of divorce, ordered a division of the marital property and awarded appellee sustenance alimony. Defendant-appellant, William E. Rowe, has filed a timely notice of appeal setting forth four assignments of error:

"1. The court erred in failing to apportion between the parties responsibility for the obligation owed the Internal Revenue Service on account of disallowed tax shelter investment which was made as a part of a joint decision of the parties.

"2. The court erred in failing to establish a specific time frame or conditions subsequent for a payment to husband for the equity in the family home.

"3. The court erred in awarding alimony both as to amount and duration where need was not established and wife was self-supporting.

"4. The court erred in awarding lump sum judgment on alimony arrears and in ordering payment without a hearing."

Appellee filed a complaint for divorce, on the grounds of gross neglect and extreme mental cruelty, on November 2, 1988. She also filed a motion for temporary alimony, attorney fees and costs. Appellant filed an answer and counterclaim for divorce on November 15, 1988, but he subsequently withdrew

that counterclaim. On December 16, 1988, a consent judgment entry was filed awarding temporary sustenance alimony to appellee in the amount of $1,150 per month.

On March 24, 1989, a final hearing on the issues of property division and sustenance alimony was held. The following relevant facts were adduced.

Appellant and appellee were married in 1955. At the time of the divorce, the parties had been married for thirty-four years. Two children were born of the marriage; however, both were emancipated at the time of trial. Appellee was fifty years old and had completed one and one-half years of high school. Appellee was employed as a clerk at Lee Williams Meats and had held that position for fourteen years. She testified that she currently earned $7.50 per hour. In 1988, appellee's gross income was slightly over $16,000. Appellee testified that she had a vested pension plan through the Ohio Meat Packers Plan but was unable to state the present value of that plan and was unaware of the benefits available to her upon retirement. Appellee also testified that she had a nervous condition, colitis and arthritis and was on medication for all three, but, upon cross-examination, admitted that these medical problems had not interfered with her employment. Appellee stated that she had a checking account with a balance of $800. Her monthly living expenses averaged approximately $1,400 and included $150 per month for gifts and $120 per month for vacation funds.

Appellant was fifty-two years old at the time of trial. He was employed as a real estate agent at Gold Key Realty, formerly operated as Grogan Real Estate, and, after the deduction of business expenses, earned approximately $35,000 in 1988. Appellant testified that as a salesman his income depended solely upon commissions. He estimated that he would gross between $30,000 and $36,000 in 1989 but, to date, he had grossed only $7,000. Appellant testified that the United States Internal Revenue Service ("IRS") had a lien on the marital residence in the amount of $19,750. At the time of trial, appellant stated that he was still negotiating with the IRS to reduce the amount of the tax and that he believed the correct amount to be $10,000. Appellant testified that he was agreeable to letting appellee live in the marital home but wanted his share of the equity, preferably within six years. Appellant's estimate of monthly expenses, totalling over $2,400, was entered into evidence.

Exhibits and testimony produced at trial demonstrated the following undisputed facts. The marital residence had an appraised value of $40,000 with a first mortgage balance of $5,000 and a second mortgage balance of $7,000. The amount of monthly payment on the first mortgage was $158 and on the second mortgage, $140. Both of the parties had an IRA, each with a present value (December 1988) of approximately $2,400. Appellant had a Keogh Plan

with a present value (December 1988) of approximately $5,100. Appellee owned a 1975 Oldsmobile and appellant, a 1987 Toyota. The parties stipulated that jointly owned real property on Starr Avenue would be deeded to their son, that appellee would receive an antique chair and two cemetery lots, and that appellant had no interest in appellee's pension plan.

On August 23, 1989, the trial court rendered its decision granting appellee's complaint for divorce. As to the division of the marital property and the allocation of marital debts, the court awarded a one-half interest in the marital property to each of the parties and ordered that appellee was to make payments on the first mortgage and appellant was to make the payments on the second mortgage. Each party was ordered to pay one-half of the taxes and insurance on the marital residence. Appellee was awarded exclusive use of the property for fifteen years. The court also ordered that each party was to keep his or her individual retirement account, that appellant would retain his Keogh plan, and appellee was to retain her pension plan. The court awarded appellant his 1987 Toyota and ordered that he take over any balance due on the loan thereon. The court awarded appellee the cemetery lots, the antique chair, the Oldsmobile and attorney fees in the amount of $1,600. The trial court also ordered that appellant should be solely responsible for the tax obligation due to the IRS. The trial court then ordered appellant to pay appellee sustenance alimony in the amount of $200 per week plus two percent poundage to be paid through wage withholding with appellant's employer. The court held that this award was modifiable in all respects and would terminate upon appellee's death, remarriage or cohabitation. Finally, the trial court ordered that appellee should receive a lump-sum judgment on arrearages owed her under the temporary order for alimony, which according to the arrearage statement issued by the Lucas County Child Support Enforcement Agency on July 23, 1989, was in the amount of $4,100.

Because it affects our disposition of this case, appellant's second assignment of error shall be considered first. In his second assignment of error, appellant asserts that the trial court erred in failing to establish a specific time frame or condition for payment of his equity in the home.

A trial court is required, after granting a divorce, to equitably divide and distribute marital property between the parties. *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413. In fashioning an equitable distribution of the marital property, the domestic relations court is vested with a broad discretion. *Berish v. Berish* (1982), 69 Ohio St.2d 318, 319, 23 O.O.3d 296, 297, 432 N.E.2d 183, 184. However, that discretion is not unlimited. *Id.* If, after reviewing the totality of the circumstances, the reviewing court determines that the trial court abused its discretion, the judgment of the lower

court must be reversed. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597, 599. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. Therefore, unless the court's failure to determine appellant's equity in the marital residence or the conditions for receipt of that equity amounted to an abuse of discretion, the trial court's judgment cannot be disturbed.

A journal entry must contain a definitive pronouncement of the court's judgment. *Brackmann Communications, Inc. v. Ritter* (1987), 38 Ohio App.3d 107, 109, 526 N.E.2d 823, 825. A judgment is a judicial act which settles all issues, fixes the rights and liabilities of the parties and determines the proceeding without the necessity of implementation by one not possessing judicial powers. *Pickering v. Pickering* (1959), 111 Ohio App. 458, 460–461, 15 O.O.2d 103, 104, 173 N.E.2d 156, 158. A divorce decree which does not dispose of all the property involved in a settlement between the parties is insufficient and incomplete. See *State v. Oppal* (1947), 49 Ohio Law Abs. 492, 494–495, 77 N.E.2d 270, 271. See, also, *Taylor v. Taylor* (1981), 2 Ohio App.3d 79, 80, 2 OBR 87, 89, 440 N.E.2d 823, 824. Accord *Bean v. Bean* (1983), 14 Ohio App.3d 358, 361, 14 OBR 462, 465, 471 N.E.2d 785, 790 (finding that the decision in *Taylor, supra,* was correct).

In the case before us, the trial court's judgment does not make a final disposition of the marital residence. While it is true that appellant expressed a desire to permit appellee to reside in the marital home, he also requested that he be awarded his equity in that home, preferably at the end of six years. The lower court's journal entry does not address this major issue. Although each of the parties is awarded a legal half-interest in the property and appellee is awarded a fifteen-year beneficial interest, *i.e.*, residence, the trial court did not determine how at the end of that fifteen-year period, or at some earlier point in the event of remarriage, cohabitation, etc., appellant would receive his equity in the home through, for example, the sale or purchase of his one-half interest in the residence. Nor does the judgment entry provide for a valuation of the residence at the time of disposition, which should include provisions for waste and improvements and the effect of any outstanding mortgages or liens that may attach, nor is there any provision in the event appellee decides to rent the residence. In rendering this decision, the trial court did not determine an issue placed directly before it—an issue which cannot be resolved by the parties but, rather, is one which requires resolution by judicial action. The court below, acting to the detriment of appellant, did

not fulfill its duty to decide and, thereby, abused its discretion. *Taylor, supra.*

Moreover, it is the duty of this court to review the findings of a domestic relations court in order to determine whether the division of marital property was equitable. *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 95, 518 N.E.2d 1197, 1200, citing *Martin v. Martin* (1985), 18 Ohio St.3d 292, 18 OBR 342, 480 N.E.2d 1112. Thus, in allocating property between the parties to a divorce, the trial court " * * * must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." *Kaechele, supra,* at paragraph two of the syllabus. In the instant case, the trial court neglected to fully carry out its responsibilities in setting the conditions and the means necessary for a final disposition of the marital residence, thereby precluding effective review of the lower court's decision as it relates to the division of marital property. *Eisler v. Eisler* (1985), 24 Ohio App.3d 151, 152, 24 OBR 240, 241, 493 N.E.2d 975, 976; *Willis v. Willis* (1984), 19 Ohio App.3d 45, 48, 19 OBR 112, 115, 482 N.E.2d 1274, 1277. Accordingly, appellant's second assignment of error is found well taken.

Appellant, in his first assignment of error, contends that the trial court abused its discretion in failing to apportion the tax obligation to the IRS for the disallowed tax shelter investment between the parties. Because the trial court failed to ultimately fix a value and provide for distribution of all of the marital property, *i.e.*, the marital residence, it is impossible for this court to determine the propriety of the trial court's decision on this issue. See *Eisler, supra,* 24 Ohio App.3d at 152, 24 OBR at 241, 493 N.E.2d at 976. We note, however, that *if* the overall distribution of the marital property is found to be equitable, a trial court in allocating a joint tax liability to just one of the parties does not abuse its discretion. *Hirschberger v. Hirschberger* (Apr. 27, 1990), Lucas App. No. L–89–018, unreported, 1990 WL 52886; *Fairchild v. Fairchild* (Mar. 31, 1988), Cuyahoga App. No. 53511, unreported, 1988 WL 36508. See, also, *Ragozzino v. Ragozzino* (May 18, 1989), Cuyahoga App. No. 55350, unreported, 1989 WL 54375. Nevertheless, under the circumstances of this case, appellant's first assignment of error cannot be determined and is found technically not well taken.

In his third assignment of error, appellant asserts that the trial court erred in its award of sustenance alimony, both as to amount and duration, arguing that appellee did not establish a need for that much alimony and that based upon the evidence appellee has sufficient income to meet her expenses. Appellant submits that he was left with few assets and most of the liabilities and, therefore, both the duration and amount of sustenance alimony are

excessive and should be reduced. Appellant also asserts that the award was contrary to law and that the trial court failed to consider the factors set forth in R.C. 3105.18,[1] failed to make specific findings as to the basis for the alimony and failed to specifically find that appellee was in need of alimony.

After the division of the marital property is made, the trial court may consider whether an additional amount of sustenance alimony is needed and the duration of such need. *Kaechele, supra,* 35 Ohio St.3d at 95, 518 N.E.2d at 1200. R.C. 3105.18(A) and (B) provide the trial court with guidelines for determining the need, the amount, and the duration of sustenance alimony. *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83, 87. The court's determination cannot be disturbed absent an abuse of discretion. *Id.*

Recently, the Supreme Court of Ohio reiterated its position in *Kaechele, supra,* by holding that an award of sustenance alimony must be based upon need. *Kunkle, supra,* 51 Ohio St.3d at 70, 554 N.E.2d at 89. Moreover, the court stated the obligor's ability to pay must also be considered. *Id.* Therefore, sustenance alimony cannot exceed an amount that is reasonable. *Id.* at paragraph three of the syllabus.

While a trial court is not required to cite to the factors found in R.C. 3105.18(B), *Russell v. Russell* (1984), 14 Ohio App.3d 408, 14 OBR 526, 471 N.E.2d 810, paragraph two of the syllabus, it must provide a basis supporting its award of sustenance alimony sufficient for appellate review. In this case, the trial court had many facts before it relevant to the factors which must be considered in determining both the *need* for alimony and in formulating an equitable award of alimony. Nonetheless, the court below appears to have adopted appellee's proposed alimony request without considering these facts.

---

1. R.C. 3105.18, alimony, provides in part:
 "(B) In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including, but not limited to, the following:
 "(1) The relative earning abilities of the parties;
 "(2) The ages, and the physical and emotional conditions of the parties;
 "(3) The retirement benefits of the parties;
 "(4) The expectancies and inheritances of the parties;
 "(5) The duration of the marriage;
 "(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
 "(7) The standard of living of the parties established during the marriage;
 "(8) The relative extent of education of the parties;
 "(9) The relative assets and liabilities of the parties;
 "(10) The property brought to the marriage by either party;
 "(11) The contribution of a spouse as homemaker."

 The award in this case seemingly has no basis and is unreasonable. First, the trial court failed to provide a definite time frame for valuation of the marital residence and final apportionment of the equity in that residence or to consider the effect of this nondisposition, and the respective mortgage payments to be made by the parties on the award of sustenance alimony. Second, even the most cursory glance at the respective gross incomes of the parties and their respective monthly expenses discloses that the amount awarded to appellee deprives appellant of sufficient funds to cover his living expenses each month. Although appellee may be entitled to an equivalent standard of living as established by the marriage, she is not entitled to do so when her "need" punishes the obligor. *Kunkle, supra,* 51 Ohio St.3d at 70, 554 N.E.2d at 89. See, also, *Birath v. Birath* (1988), 53 Ohio App.3d 31, 34, 558 N.E.2d 63, 67. Thus, the amount awarded was unreasonable. In short, the trial court could not have considered all of the factors found in R.C. 3105.18(B) and still granted such an award. True, the parties are almost the same age, the marriage was of long duration, and appellant had a relatively higher income when compared to appellee; however, appellee was awarded the major portion of the marital property, is self-supporting, has her own pension, and her health problems do not interfere with her employment. In addition, appellant was ordered to pay the entire obligation for the invalid tax shelter. This tax shelter consequence was not even figured into appellant's monthly expenses and is relevant in determining an award of sustenance alimony. *Id.* at 34, 558 N.E.2d at 67. For these reasons, appellant's third assignment of error is found well taken.

 In his fourth assignment of error, appellant asserts that the trial court erred in awarding a lump-sum judgment on temporary alimony arrearages without a hearing. Appellant argues that there was no evidence presented to the court to substantiate a finding that an arrearage existed and that appellee did not make any claim for arrearages under the temporary order for alimony. Appellant also argues that the statement issued by the Lucas County Child Support Enforcement Agency on July 23, 1989, is not authentic and that the trial court abused its discretion in ordering payment of an arrearage in the amount of $4,100.

In *Maloney v. Maloney* (1986), 34 Ohio App.3d 9, 516 N.E.2d 251, the Lake County Court of Appeals determined that records of the bureau of support are official reports and may be introduced at a hearing with proper authentication pursuant to R.C. 2317.42. The *Maloney* court held, however, that a court could not take judicial notice of arrearages in alimony payments as set forth in official records of the bureau of support absent those records being authenticated and admitted into evidence. *Id.* at 12, 516 N.E.2d at 253.

Further, in *Hoeflinger v. Hoeflinger* (Mar. 10, 1989), Lucas App. No. L–87–416, unreported, 1989 WL 20240, this court held that before a court may order payment of an arrearage of temporary alimony payments, evidence must be presented to substantiate a finding that an arrearage exists. In *Hoeflinger*, this court found that the trial court had improvidently ordered payment of an arrearage in its final judgment entry where the record indicated that no evidence of an arrearage was presented to the court and where the appellee therein had not made any claim that there was an arrearage.

In this case, there is no indication in the record that any claim made by appellee that appellant was in arrears in his temporary alimony payment or that any evidence was introduced as to such arrearages. Rather, it appears that at some point during the proceedings the trial court independently procured an unauthenticated statement from the Lucas County Child Support Enforcement Agency. Based upon that statement, the court issued the order for a lump-sum temporary alimony arrearage payment in the amount of $4,100, the amount set forth in the statement, and attached the statement to its judgment entry. Upon consideration of the foregoing, this court finds that it is not within the trial court's discretion to independently procure evidence and to enter judgment thereon. Therefore, the trial court abused its discretion in ordering appellant to pay temporary alimony arrearages in the amount of $4,100. Accordingly, appellant's fourth assignment of error is found well taken.

The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is reversed. This case is remanded to said court for valuation of the marital residence and division of the marital property and a redetermination of sustenance alimony. That portion of the judgment entry awarding arrearages is ordered to be stricken. Appellee is hereby ordered to pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

GLASSER, J., concurs.

ABOOD, J., concurs as to Assignments of Error Nos. 1 and 4 and dissents as to Assignments of Error Nos. 2 and 3.