DECISION
Plaintiff-appellant, Eddie B. Richardson, appeals from the September 28, 2001 judgment entry/decree of divorce of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting appellant's petition for divorce on the grounds of gross neglect and incompatibility. For the reasons that follow, we affirm the judgment entry of the trial court.
Appellant and appellee, Rebecca Richardson, were married on October 26, 1986 in Columbus, Ohio, and remained married for approximately 15 years. No children were born of the marriage. However, both appellant and appellee had children from prior relationships.
Appellant worked for the Columbus Police Department with an annual income of $47,008, and appellee was employed for Huntington Bank where she earned $44,000 annually. Appellee testified, through written testimony, that from 1998 to 2000 she worked, in addition to her full-time position, five additional part-time jobs.
On March 13, 2000, appellant filed for divorce on the grounds of incompatibility. Appellant alleged that throughout the marriage, appellee maintained the family finances, and paid the bills out of the marital account. Appellant testified, through written testimony, that his paycheck and special duty income were deposited into the marital account.
In 1986, appellant noticed that while appellee was spending large amounts of money from the marital account, the marital bills were not being paid. Appellee denied any mismanagement of the marital funds. Appellant further alleged that appellee spent money in their savings account without the consent of appellant. Both parties accused the other of extramarital affairs. Appellee further alleged, in her written testimony, that appellant mentally and verbally abused her.
On March 20, 2001, a handwritten memorandum of agreement was prepared and signed by both parties and their counsel. The parties agreed to submit written testimony in lieu of a trial, and requested the trial court to approve and include their agreement in a court order or entry. After reviewing the written testimony and documentation, the trial court determined that neither party concisely listed the marital property, nor made suggestions as to how the property was to be divided. Therefore, the trial court requested additional testimony, information, and supporting documentation from each party. Appellee submitted supplemental testimony on September 18, 2001, and appellant submitted his supplemental testimony on September 20, 2001. The trial court determined that, in spite of the inadequacy of the initial and supplemental written testimony and supporting documentation, it would make the following findings based on the parties' desire to be divorced and their agreement to submit only written testimony:
"DURATION OF MARRIAGE
"The court finds that the duration of marriage is from the date of the marriage, October 26, 1986 to March 20, 2001, the date the parties testified before the court. The length of the marriage is approximately fifteen years.
"REAL ESTATE
"* * *
"* * * The court ORDERS that the parties shall immediately list the Blue Spruce property for sale with a real estate broker of their mutual choice and at a price suggested by the real estate broker. Until said property is sold, [appellant] shall continue to pay the first mortgage and all other bills associated with the property that he has regularly been paying. [Appellee] shall continue to pay the second mortgage and any expenses she has regularly been responsible for concerning the home. Upon closing, and after payment of the first mortgage due and owing upon said real estate, payment shall be made on the second mortgage due and owing, then any real estate commissions payable and the normal and customary costs of closing. The net proceeds realized therefrom, after reimbursement to [appellant], shall be divided equally, fifty percent to [appellee] and fifty percent to [appellant]. The first $8,600 shall be reimbursed to [appellant] for his premarital money used to purchase the home. * * *
"* * * The court awards the Minerva Avenue property to the wife who shall be solely responsible for any costs, expenses, taxes, debts, mortgages or liabilities arising from the * * * property. * * *
"DEBTS
"* * *
"* * * Based on the minimal testimony provided by each party, the Court ORDERS that each party be responsible for one-half of all the marital debt owed as of March 13, 2000, the date the Complaint for divorce was filed. This includes any portion of the Huntington Bank line of credit that is not paid off by the proceeds of the home, all credit card debt, even if only in one parties name, and any other marital debts. * * * [Appellee] shall be responsible for one-hundred percent of any marital phone bills, the entire * * * expenses to improve the Minerva Avenue property, her * * * Sallie Mae debt, and the [money] owed to her sister * * *.
"RETIREMENT ASSETS
"* * * [Appellee] is awarded one-half of the marital portion of [appellant's] Ohio Police and Fire Pension Fund and Ohio Deferred Compensation Plan. Each party is awarded one-half of the HNB 401(K), as of February 28, 2001.
"* * *
"VEHICLES
"* * * [Appellee] is awarded [a 1999 Ford Mustang, a 2000 Chevrolet Blazer, and a 1995 Ford Mustang] and shall be solely responsible for any indebtedness or liability on the same. [Appellant] is the owner of a Ford Thunderbird. [Appellant] shall be solely responsible for any indebtedness or any liability thereon and shall be awarded the Ford Thunderbird.
"SPOUSAL SUPPORT
"Neither party requested spousal support. Therefore, the court ORDERS that neither shall pay spousal support to the other. * * *
"CHECKING AND SAVINGS ACCOUNTS
"Neither party specifically mentioned any current checking or savings accounts. Therefore, the court ORDERS that each party is entitled to any savings, checking, or certificates of deposits in his or her name.
"STOCKS AND BONDS
"The parties have nineteen shares of Fifth-Third Bank stock and ten shares of First Star Bank stock. The court ORDERS that each party in [sic] awarded one-half the value of the Fifth Third Bank stocks and one-half the value of the First Star Bank stock.
"LIFE INSURANCE
"* * * The court ORDERS each party is awarded any policy that he or she now owns." (Judgment Entry/Decree of Divorce, September 28, 2001, 9-19.)
The trial court held that the division of property was equitable, if not precisely equal. It is from this entry that appellant appeals, assigning the following as error:
"1. Given the admitted inadequacy of the `documentation' presented and the absence of sworn testimony relating to these matters, the trial court erred proceeding in this fashion without requiring sworn testimony to clarify the issues the court found to be insufficiently documented.
"2. The court erred in its findings by not following the requirements of [R.C.] 3105.171 that essentially the division of marital assets and obligations be equal.
"3. The court erred in its decision by not following the requirement of [R.C.] 3105.171 that the findings be made to demonstrate the value of the marital assets."
In his first assignment of error, appellant contends the trial court erred when it failed to set the matter for an oral hearing to accept sworn testimony relating to operative facts and an explanation of the supported documentation.
When reviewing the propriety of a trial court's determination in a domestic relations case, an "abuse of discretion" standard is applied. Booth v. Booth (1989), 44 Ohio St.3d 142; Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131; Middendorf v. Middendorf (1998), 82 Ohio St.3d 397. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
Appellant contends that the trial court should have conducted a hearing to clarify the issues the trial court found to be inadequate or insufficient. Appellant states that the trial court "seemed simply to render a decision without adjudicating the issues or appearing to understand or accept the significance of the documentation that was presented." (Appellant's brief, 5.) However, at no time did appellant make a request to the trial court to have the memorandum of agreement set aside, and reset the matter for a hearing. The language of the agreement, with appellant's signature, undermines appellant's contentions that the trial court erred in not conducting an oral hearing. As a result, the trial court was not required to hold an evidentiary hearing.
Furthermore, we are not convinced that an oral hearing would have clarified the inadequate documentation, considering that appellant failed to provide the trial court with adequate supporting documentation in his initial and supplemental testimony. After the trial court determined that the parties did not provide adequate documentation in their initial written testimony, the trial court requested additional testimony, specifically requesting "information and/or documentation concerning the line of credit with Huntington Bank, credit card balances and statements since 1996 to the present date, documentation on the parties' savings account and certificate of deposit, [appellee's] employment history, and information concerning several other smaller issues." (Judgment Entry/Decree of Divorce, September 28, 2001, 2.)
First, appellant claimed that, when the parties took out a second mortgage on the property located at 6013 Blue Spruce Street, the initial amount of the loan was for $10,000. Appellant alleges that appellee continued to withdraw, without his consent, another $30,000 on the line of credit. Appellant submitted bank statements to support his claim that, from 1998 through 2000, appellee deposited approximately $46,965.36 into her personal account that was above her annual salary. Second, appellant contends that the parties had a joint savings account, which on December 23, 1998, had a balance of $14,579.89, and a certificate of deposit worth $21,222.17 as of February 22, 1999. Appellant contends that appellee spent the money without his consent.
Despite being given two separate opportunities to provide the trial court with adequate supporting documentation, appellant failed to do so. Appellant failed to provide evidence that would indicate that the deposits made into appellee's personal account were obtained from the line of credit and not by other means. More importantly, appellant failed to provide the trial court with any documentation concerning the line of credit from Huntington Bank. Therefore, upon review of the record, it was not an abuse of discretion for the trial court to rule on the basis of the evidence it had, especially in light of the failure of either party to object to the trial court not holding an oral hearing.
Furthermore, in addition to the trial court's findings, the record contains a clear express waiver of the rights of the parties to hold an oral hearing. The March 20, 2001 memorandum of agreement explicitly states:
"Parties agree and hereby stipulate that the listing of assets, liabilities and income attached hereto in three (3) pages is a true and correct listing of both the marital and separate assets of the parties, the indebtedness of the parties, and the incomes of the parties and no further testimony or other evidence shall be submitted regarding same." (Emphasis added.)
In Newsom v. Newsom (Mar. 21, 2002), Franklin App. No. 01AP-686, we recognized that:
" `As a general rule, the doctrine of waiver is applicable to all personal rights and privileges, whether secured by contract, conferred by statute, or guaranteed by the Constitution, provided that the waiver does not violate public policy.' Sanitary Commercial Services, Inc. v. Shank (1991), 57 Ohio St.3d 178, 180 * * * quoting State ex rel. Hess v. Akron (1937), 132 Ohio St. 305, 307 * * *. `A waiver is a voluntary relinquishment of a known right, with the intent to do so with full knowledge of all the facts.' N. Omsted v. Eliza Jennings, Inc. (1993),91 Ohio App.3d 173, 180 * * *. Moreover, `[a] party may voluntarily relinquish a known right through words or by conduct.' Id. * * *" The evidence in the record does support a waiver of the parties' rights. The findings of the trial court were adequate given the parties' explicit agreement to submit their written testimony, in lieu of an oral hearing. Accordingly, appellant's first assignment of error is not well-taken and is overruled.
Appellant's second and third assignments of error address the trial court's alleged failure to comply with R.C. 3105.171. As these two assignments of error are interrelated, they will be addressed together. Appellant contends that the trial court erred in assessing and issuing specific findings of the value of the martial property and debts without having sufficient information to make the informed findings. Appellant further contends that since the trial court failed to issue the specific findings required under R.C. 3105.171(F), the trial court cannot justify an unequal division of the marital assets.
Appellant specifically states that the trial court made "no finding as to value as to any of the major assets, fails to discuss the fact that a piece of property awarded outright to the defendant subject to a mortgage is, in fact, clearly marital property[,] * * * fails to make findings as to the value of the motor vehicles, or the debt thereon and the fact that the Court did not have documentation to confirm what the debt structure was on the second mortgage on the marital residence * * *." (Appellant's brief, 6-7.)
"[I]n order to make an equitable division of property, the trial court should first determine the value of marital assets." Casper v. DeFrancisco (Feb. 19, 2002), Franklin App. No. 01AP-604, citing Eisler v. Eisler (1985), 24 Ohio App.3d 151, 152. "In order for an appellate court to make a proper review of a trial court's property division, each asset must be assigned a value." Gottlieb v. Gottlieb (Mar. 19, 1991), Franklin App. No. 90AP-1131, citing Eisler, supra. The trial court has "broad discretion to develop some measure of value. * * * The trial court is not privileged to omit valuation altogether. A party's failure to put on any evidence does not permit assigning an unknown as value. The court itself should instruct the parties to submit evidence on the matter." Willis v. Willis (1984), 19 Ohio App.3d 45, 48.
In this case, while the trial court did not provide a valuation of the marital property in the judgment entry, the trial court, in rendering its decision, based its findings on the parties' stipulation to the value of the marital property in the March 20, 2001 memorandum of agreement. The parties expressly waived the valuation provisions of R.C. 3105.171 when the parties filed the memorandum of agreement and stipulated to the value of the marital property. Therefore, the trial court relied on the parties' memorandum of agreement. As such, the trial court's decision was not unreasonable, arbitrary, or unconscionable.
Appellant further contends that the trial court's division of the marital property was unequal. The Ohio Supreme Court has established that "[i]n reviewing the equity of a division of property, one of the basic guidelines an appellate court is bound to follow is that the trial court's judgment cannot be disturbed on appeal absent a showing that the common pleas court abused it discretion in formulating its division of the marital assets and liabilities of the parties." Martin v. Martin (1985), 18 Ohio St.3d 292, 294-295, citing Blakemore, at 218. "A trial court must have discretion to do what is equitable upon the facts and circumstances of each case.
"Of course, a trial court's discretion, though broad, is not unlimited. A reviewing court may modify or reverse a property division, if it finds that the trial court abused its discretion in dividing the property as it did. Section 3(B), Article IV of the Ohio Constitution; App.R. 12". Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355.
Chapter 3105 of the Ohio Revised Code governs divorce, legal separation, annulment, and dissolution of marriage. R.C. 3105.171
concerns the division of marital property and separate property. Specifically, R.C. 3105.171(C)(1) requires:
"[T]he division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section."
In this case, in addition to stipulating to the value of the marital property, the parties further stipulated that an equal division of the marital assets would be $206,689.50. Appellant contends that the trial court failed to make an equitable decision as to the division of the marital property. However, appellant fails to set forth how the trial court's division of the marital property and assets was an unequal division. Here, the trial court awarded each party fifty percent of the net proceeds from the sale of the Blue Spruce property; one-half of the marital debt; one-half of the retirement assets; the parties' own vehicles; one-half of the stocks and bonds; and the parties' own life insurance policy. Without specific evidence supporting appellant's contention that the division of the property was unequal, the trial court's judgment cannot constitute an abuse of discretion. Jackson v. Jackson (2000), 137 Ohio App.3d 782, 803. In view of these facts, the trial court's factual finding and equitable division of marital assets was not unreasonable, arbitrary, or unconscionable. Accordingly, appellant's second and third assignments of error are not well-taken and are overruled.
For the foregoing reasons, appellant's first, second, and third assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.
Judgment affirmed.
BOWMAN and BROWN, JJ., concur.